UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JODY D. PERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:11-CV-00108 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Jody Perry appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Perry applied for DIB on February 27, 2006, alleging that she became disabled as of October 23, 2003. (Tr. 12, 15.) She was last insured for DIB on March 31, 2007 (Tr. 15); therefore, she must establish that she was disabled on or before such date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she was disabled as of her date last insured in order to recover DIB benefits).

The Commissioner denied Perry's application initially and upon reconsideration, and Perry requested an administrative hearing. (Tr. 49.) Administrative Law Judge ("ALJ") Ronald

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

Jordan conducted a hearing on October 1, 2008, at which Perry (who was represented by counsel) and a vocational expert testified. (Tr. 611-33.)  Due to the complexity of the medical evidence, the ALJ held a supplemental hearing on February 23, 2009, at which Perry (who again was represented by counsel), her mother, a vocational expert, and Jack Thomas, Ph.D., a clinical psychologist, testified. (Tr. 636-76.)

On May 8, 2009, the ALJ rendered an unfavorable decision to Perry, concluding that she was not disabled because she could perform a significant number of jobs in the national economy despite the limitations caused by her impairments. (Tr. 12-22.)  The Appeals Council denied Perry's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-8.)

Perry filed a complaint with this Court on March 30, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.)  She primarily argues in this appeal that the ALJ improperly discounted both the credibility of her symptom testimony and the opinion of her treating psychologist, Dr. Trexler, who stated that she is disabled.

## II.  FACTUAL BACKGROUND[2]

As of her date last insured, Perry was thirty-eight years old, held a Bachelor's degree in criminal justice, and was working twenty-five to thirty hours a week as a public speaker in schools educating students about traumatic brain injuries. (Tr. 15, 44, 57, 618-19.)  She also possessed work experience as a police officer, landscape assistant, and table buser at a restaurant. (Tr. 57, 621-22, 626, 628.)

---

[2] In the interest of brevity, this opinion recounts only the portions of the 676-page record necessary to the decision.

2

*A.  Perry's Testimony at the Hearings*

At the hearings, Perry testified that she lives in her own home and independently performs her activities of daily living; she also drives a car, but must take a break after driving two and one-half hours. (Tr. 619-20, 626, 645.)  She reported that, since her brain trauma in 1995, she has difficulty controlling her emotions and interacting with others. (Tr. 623-25.)  She stated that she quit working because she became mentally and physically fatigued on the job, would feel frustrated and irritable, and then could not keep up with job requirements. (Tr. 619, 622-23.)  She contended that when she gets tired, she experiences "split vision." (Tr. 626.)

Perry's mother also testified at the hearing, relaying that Perry becomes "easily frustrated by things" and that everything becomes more difficult for her when she is tired. (Tr. 640, 642, 650.)  She elaborated that Perry has difficulty with multi-tasking, is impatient, and that extraneous noise and activity cause her fatigue. (Tr. 641-43.)

*B.  Summary of the Relevant Medical Evidence*

Perry sustained a closed head injury in a motor vehicle accident in May 1995 while working as a Connecticut state trooper. (Tr. 14, 233-590.)  Two months later, Frances Goff, Ph.D., Perry's treating neuropsychologist, performed a detailed assessment and concluded that Perry had a mild impairment of brain functioning and that her impairments were more related to motor functioning, motor speed, incidental memory, and visual-spatial skills, rather than alertness, attention, or abstract concept formation. (Tr. 581-83.)  In December 1995, Dr. Goff opined that Perry was "mentally and emotionally ready to return to independence" and that, although she likely would not be able to return to the "stringent" requirements of police work, she would "be able to work in related areas." (Tr. 589.)

More than eight years later, in February 2004, Lance Trexler, Ph.D., performed a neuropsychological evaluation, which indicated that Perry had some deficits in motor speed in her right arm and right-left confusions, mildly impaired judgment, moderately impaired concentration and attention, intact memory with some visual memory impairment, average intelligence, and a "long-term mood of depression." (Tr. 192-93.)  At the time, Perry was not taking any medication and was working two part-time jobs. (Tr. 191.)  Dr. Trexler concluded that although Perry had some residual emotional and cognitive deficits, including "frontal lobe personality changes, primarily characterized by depression, flat affect, and irritability," she had recovered relatively well from a very severe head injury. (Tr. 193.)  He recommended, however, that she have some supervision when performing complex activities, such as financial management, and that she might benefit from a neurostimulant to reduce her irritability and attention deficits. (Tr. 193.)

In April 2004, Perry visited Andrea Conti, D.O., and she prescribed a trial dose of Ritalin. (Tr. 189.)  The next month, Perry reported no noticeable improvement from the Ritalin, and Dr. Conti doubled the dosage. (Tr. 189.)

In December 2004, Dr. Trexler documented that Perry reported a "good mood"; in addition, Dr. Maria Solito observed that Perry had a "bright affect" and denied depression, anxiety, insomnia, and sleep disturbance. (Tr. 224-27.)  Dr. Solito noted that Perry wanted to continue in her job as a public speaker but that she also was "currently looking for a more challenging with action type of job." (Tr. 225.)  Dr. Trexler's progress notes in 2005 indicate that Perry's affect was brighter and that her mood improved with medication. (Tr. 195-204.)

In June 2006, Perry underwent a consultative mental status examination and Wechsler

4

Memory Scale III administered by Barbara Gelder, Ph.D. (Tr. 153-57, 160-64.)  She diagnosed Perry with organic encephalopathy and dysthymia and assigned her a current Global Assessment of Functioning ("GAF") score of 55 and a past GAF of 57.[3] (Tr. 157.)

The next month, Dr. H.M. Bacchus performed a consultative physical examination. (Tr. 143-46.)  Other than noting that Perry had a slightly flat affect, his examination findings were unremarkable. (Tr. 143-46.)  He concluded that Perry retained the functional capacity to perform general, repetitive-type duties in a simplified, low-challenging work environment. (Tr. 145.)

Also in July 2006, Dr. F. Lavallo, a state agency physician, reviewed Perry's record and concluded that she could perform the full range of medium work; that is, she could lift twenty-five pounds frequently and fifty pounds occasionally; stand or walk about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; perform unlimited pushing and pulling; frequently stoop, kneel, crouch, and crawl; and occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. (Tr. 16-23.)  Dr. Lavallo's opinion was later affirmed by a second state agency physician. (Tr. 15.)

That same month, Donna Unversaw, Ph.D., a state agency psychologist, reviewed Perry's record and found that she had mild limitations in most categories of understanding and memory, concentration and persistence, social interaction, and adaption, with the exception of moderate limitations in her ability to understand, remember, and carry out detailed instructions; maintain concentration for extended periods; and complete a normal workday and workweek without

---

[3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000).  A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id.

interruptions from psychologically based symptoms. (Tr. 24-26.) She concluded that Perry retained the capacity to perform simple, repetitive tasks. (Tr. 26.) Dr. Unversaw's opinion was later affirmed by F. Kladder, Ph.D., another state agency psychologist. (Tr. 15.)

In October 2006, Dr. Trexler penned a letter to Perry's attorney stating that Perry had on multiple occasions attempted to work but failed due to persisting cognitive difficulties from her head injury. (Tr. 79.) He reported that she also suffered from recurrent episodes of major depression, which caused deterioration in her functioning. (Tr. 79.) He emphasized that the neuropsychological testing documented cognitive disturbances, particularly in attention and working memory, and that she "cannot cognitively keep up with even the simplest of job demands." (Tr. 79.)

*C. The Medical Expert's Testimony at the Hearing*

Dr. Jack Thomas, a clinical psychologist, testified at the second hearing as a medical expert. (Tr. 653-75.) He stated that the medical evidence, including the neuropsychological testing, revealed that Perry did not have much of a cognitive impairment and that her memory and intelligence scores were in the average to low-average range. (Tr. 655-57.) Specifically, Dr. Thomas summarized: "The objective evidence suggest largely all of her cognitive scores are intact, and even her lowest cognitive scores are in the 40th percentile, and . . . the 40th percentile is still in the average range." (Tr. 670.) He further opined that any inattentiveness, concentration difficulties, or inflexibility that Perry experienced would not be severe. (Tr. 661, 671.) Dr. Thomas concluded that Perry had the capacity to perform simple, repetitive work as well as some detailed and executive tasks. (Tr. 663.)

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.*  Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).  Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

### IV.  ANALYSIS

#### A.  *The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  A physical or mental impairment is "an

7

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See* 20 C.F.R. § 404.1520; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

On May 8, 2009, the ALJ rendered his decision. (Tr. 12-22.) He found at step one of the five-step analysis that Perry had not engaged in substantial gainful activity after her alleged onset date. (Tr. 16.) At step two, he concluded that the residuals of the closed head injury Perry sustained in 1995 constitute a severe impairment. (Tr. 15.) The ALJ then at step three

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

8

determined that Perry's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 17.)

Before proceeding to step four, the ALJ found that Perry's subjective complaints were "less than fully credible" (Tr. 20) and that as of her date last insured she had the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels, including heavy/very heavy work. Giving the claimant the full benefit of doubt with regard to her allegations and subjective complaints it is found that she is limited to simple, repetitive tasks which would afford the claimant her own workstation at which the work is performed. She is further limited to low stress work that would require only superficial contact with supervisors and co-workers. She should not be expected to perform jobs that would require contact with the general public.

(Tr. 18). Based on this RFC and the vocational expert's testimony, the ALJ concluded at step four that Perry was unable to perform her past relevant work as a police officer. (Tr. 20.) The ALJ concluded at step five, however, that she could perform a significant number of other jobs within the economy, including packer, assembler, and machine tender/feeder. (Tr. 21.) Therefore, Perry's claim for DIB was denied. (Tr. 22.)

### C. The ALJ's Credibility Determination Will Not Be Disturbed

Perry first contends that the ALJ improperly discounted the credibility of her testimony of debilitating limitations. The ALJ's credibility determination, however, will not be disturbed.

Because the ALJ is in the best position to evaluate the credibility of a witness, his determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th

9

Cir. 2006), her determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness . . . .").

Here, the ALJ found Perry's testimony of debilitating limitations was "less than fully credible."[5] (Tr. 20.) In doing so, the ALJ adequately considered the various factors set forth in 20 C.F.R. § 404.1529(c) and Social Security Ruling 96-7p for assessing a claimant's credibility.

First, the ALJ considered Perry's activities of daily living. (Tr. 19-20.) He noted that Perry lived alone; is independent in her self care; drives a car; performs her own household chores including cooking, cleaning, laundry, and grocery shopping; and enjoys working out, going to the lake, and having dinner with friends. (Tr. 19-20); 20 C.F.R. § 404.1529(c)(3)(i); *see Rice*, 384 F.3d 363 at 371 (finding that the ALJ properly considered the claimant's daily activities, among other factors, when assessing her credibility); *Schmidt*, 395 F.3d at 746-47 (considering claimant's performance of daily activities as a factor when discounting claimant's credibility). In addition, the ALJ considered that, when taking medication, Perry was able to make as many as seven presentations in one day and between one and four engagements per week in her job as a public speaker, which was skilled and stressful work. (Tr. 20.) He also noted that in May 2008 Perry worked part time as a pet and house sitter. *See Berger v. Astrue*,

---

[5] Perry contends that the ALJ found Perry fully credible because when assigning her RFC he stated that he was "[g]iving [her] the full benefit of doubt with regard to her allegations and subjective complaints." (Tr. 18.) Perry's nitpicking of the ALJ's phraseology, however, is unavailing. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (explaining that when reviewing the ALJ's decision, the court will "give the opinion a commonsensical reading rather than nitpicking at it"). When penning his credibility determination, the ALJ expressly found Perry's symptom testimony "less than fully credible," a fact which she blatantly ignores. *Id.* ("[The claimant's] argument amounts to nothing more than a dislike of the ALJ's phraseology.").

516 F.3d 539, 546 (7th Cir. 2008) (finding that claimant's ability to work part-time undermined his claim of total disability).

The ALJ also considered the objective medical evidence when determining the credibility of Perry's complaints. *See Eichstadt v. Astrue*, 534 F.3d 663, 558 (7th Cir. 2008) ("The claimant bears the burden of producing medical evidence that supports her claims of disability."). He noted that the medical evidence indicated that Perry's memory skills were in the low average range and that her depression and fatigue improved with medication. (Tr. 20.) In addition, he emphasized that her allegations of visual problems lacked objective support, as a July 2006 examination reflected that her uncorrected vision was 20/20 in both eyes. (Tr. 20.) He also found that there were no objective findings to support her complaints of chronic neck and shoulder pain. (Tr. 20.) Of course, an ALJ is entitled to consider the objective medical evidence, or lack thereof, as a factor in assessing credibility. 20 C.F.R. § 404.1529(c)(2); SSR 96-7p; *see Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Smith v. Apfel*, 231 F.3d 433, 439 (7th Cir. 2000) ("[A]n ALJ may consider the lack of medical evidence as probative of the claimant's credibility."); *Crawford v. Astrue*, 633 F. Supp. 2d 618, 633 (N.D. Ill. 2009) ("[A]n ALJ may properly discount portions of a claimant's testimony based on discrepancies between [the c]laimant's allegations and objective medical evidence.").

In addition, the ALJ observed that Perry's symptoms improved with medication and that there was no evidence that she suffered adverse side effects from its use. (Tr. 19.) The ALJ is certainly entitled to consider the types of treatment, or lack thereof, that a claimant has undergone when determining her credibility. 20 C.F.R. § 404.1529(c)(3) (considering a

11

claimant's use of medications and treatment measures as two factors in analyzing claimant's subjective symptoms); *see Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (finding that claimant's subjective complaints of disabling pain were not entirely credible where the claimant's treatment was "routine and conservative"); *Ellis v. Astrue*, No. 2:09-cv-145, 2010 WL 3782265, at *20 (N.D. Ind. Sept. 20, 2010) (affirming the ALJ's discounting of claimant's complaints of debilitating fatigue given the discrepancies between her self-reported symptoms and the lack of treatment for the purported condition); SSR 96-7p.

Moreover, although the ALJ did not fully credit Perry's subjective symptom testimony, he did recognize that the record indicated that Perry certainly experienced some residual limitations from her brain injury. (Tr. 18.) Accordingly, the ALJ restricted Perry to performing simple, repetitive tasks at her own workstation in a low stress situation that would require only superficial contact with supervisors and co-workers and no contact with the public. (Tr. 18.) Thus, the ALJ did indeed credit Perry's symptom testimony to some degree, acknowledging that she experiences some limitations from her brain injury. *See, e.g.*, *Vincent v. Astrue*, No. 1:07-cv-28, 2008 WL 596040, at *16 (N.D. Ind. Mar. 3, 2008) (affirming ALJ's credibility determination where he discredited the claimant's symptom testimony only in part).

In sum, the ALJ adequately considered the credibility of Perry's symptom testimony in accordance with the factors identified in 20 C.F.R. § 404.1529(c) and Social Security Ruling 96-7p and determined that the evidence did not support the alleged severity of her impairments. In doing so, the ALJ adequately built an accurate and logical bridge between the evidence and his conclusion that Perry's symptom testimony was less than fully credible, and his determination is not "patently wrong." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000); *Powers*, 207 F.3d at

435. Therefore, the ALJ's credibility determination, which is entitled to special deference, *Powers*, 207 F.3d at 435, will not be disturbed.

   *D. The ALJ's Discounting of Dr. Trexler's Opinion Is Supported by Substantial Evidence*

Perry also contends that the ALJ improperly discounted Dr. Trexler's letter to her attorney, which stated that she "cannot cognitively keep up with even the simplest of job demands." (Tr. 79.)  The ALJ's decision to discount this evidence, however, is indeed supported by substantial evidence.

The Seventh Circuit Court of Appeals has instructed that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and  circumstances." *Clifford*, 227 F.3d at 870; *see* 20 C.F.R. § 404.1527(d)(2). However, this principle is not absolute, as "a treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record."[6] *Clifford*, 227 F.3d at 870; *see Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002); 20 C.F.R. § 404.1527(d)(2).

Furthermore, a claimant is not entitled to DIB simply because his treating physician opines that he is "unable to work" or "disabled." *Clifford*, 227 F.3d at 870.  The determination of

---

[6] In the event the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the Commissioner must apply the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner. 20 C.F.R. § 404.1527(d); *see Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996).

disability is reserved to the Commissioner.[7] *Id.*; *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); 20 C.F.R. § 404.1527(e)(1).  Regardless of the outcome, the Commissioner must always give good reasons for the weight ultimately applied to the treating source's opinion. *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ discussed Dr. Trexler's opinion in detail, penning three paragraphs on the matter. (Tr. 24-25.)  Ultimately, however, he chose to assign "little weight" to Dr. Trexler's opinion that Perry was disabled (expressed in the October 12, 2006, letter to Perry's attorney), finding it lacked objective support and was inconsistent with other medical evidence of record. (Tr. 19.)

More particularly, the ALJ emphasized that Dr. Trexler's letter to Perry's attorney did not cite any objective evidence to support its conclusion that she was disabled. *See Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010) (unpublished) (discounting treating physician's opinion that claimant could not work a full day where it was not supported by clinical findings or diagnostic tests).  Of course, "[a]n ALJ need not give controlling weight to a treating physician's opinion if it is not supported by objective clinical findings." *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999); *see Smith*, 231 F.3d at 441 (collecting cases); 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion.").

In addition, the ALJ observed that Dr. Trexler's opinion finding Perry disabled was

---

[7] That is, "a medical source statement must not be equated with the administrative finding known as the RFC assessment," which is "based upon consideration of *all* relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p (emphasis added); *see* 20 C.F.R. § 404.1545.

inconsistent with the results of her psychometric testing, which indicated that her cognitive abilities were in the average range and memory skills in the low average range. (Tr. 19.) The ALJ also found Dr. Trexler's opinion inconsistent with Dr. Solito's September 2005 note, reflecting Dr. Trexler's view that Perry was "showing improvements" with Ritalin and, accordingly, that she was "ready to be weaned down with visits further apart." (Tr. 126.) Of course, an ALJ is entitled to discount a medical source opinion when it is inconsistent with the other evidence of record. 20 C.F.R. § 404.1527(d) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *see Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (discounting treating physician's opinion that claimant was unable to perform even sedentary work where it was inconsistent with other medical evidence of record); *Books,* 91 F.3d at 979 (stating that an ALJ must consider a variety of factors, including the consistency of the evidence, when assessing conflicting medical opinion evidence).

In light of these inconsistencies and the lack of objective medical evidence, the ALJ reasonably determined that "the evidence as a whole did not lend credibility to [Dr. Trexler's] restrictive assessment of [Perry's] functional capacity." *Smith*, 231 F.3d at 442. Of course, as the Seventh Circuit has noted, "a claimant's treating physician may be biased in favor of the claimant." *Id*. That is, "[t]he patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007*)* (quoting *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)); *see Dixon*, 270 F.3d at 1177 (questioning the validity of treating physician's opinion where it was provided in response to a question prepared by the claimant's attorney and failed to cite

15

objective medical evidence in support).

Instead, the ALJ assigned an RFC consistent with the opinions of Dr. Unversaw, Dr. Kladder, Dr. Bacchus, and Dr. Thomas, who all determined that Perry retained the capacity to perform simple, repetitive tasks. (Tr. 17, 126, 145, 663.) Of course, "[t]he regulations, and this Circuit, clearly recognize that reviewing physicians and psychologist[s] are experts in their field and the ALJ is entitled to rely on their expertise." *Ottman*, 306 F. Supp. 2d. at 839; *see* 20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.").

In sum, Perry has failed to show that a remand is warranted based on the ALJ's consideration of Dr. Trexler's opinion. This Court simply cannot accept her plea to reweigh the medical source evidence in the hope that it will come out in her favor this time.[8] *See Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000) (explaining that the court is not allowed to substitute its

---

[8] Perry also argues that her several unsuccessful work attempts conclusively establish that she is disabled. (*See* Tr. 596-600.) She does not suggest, however, much less prove, that any of her past jobs (for example, busing tables, landscaper, or public speaker) reflect the limitations assigned in her RFC—that is, low stress work consisting of simple, repetitive tasks performed at her own workstation with only occasional contact with supervisors or coworkers and no contact with the public. In fact, an agency representative indicated just the opposite. (Tr. 101 ("The attorney rep submitted letters from workplaces [claimant] has attempted to work at—however, it is noted that these job descriptions are more than simple 1-2 step types of work.").)
    In addition, Perry suggests in her reply brief that the Commissioner failed to respond to her argument "that she meets a listing." (Reply Br. 4.) Perry, however, did not develop this argument in her opening brief, and therefore it is deemed waived. *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) (stating that the Seventh Circuit has "repeatedly ha[s] made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *see also Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011); *Gross v. Town of Cicero*, 619 F.3d 697, 704-05 (7th Cir. 2010). In any event, "[t]o meet the requirements of a listing, [a claimant] must have a medically determinable impairment(s) that satisfies all of the criteria of the listing." 20 C.F.R. § 404.1525(d). Here, Perry makes no effort to connect the evidence she cites to the requirements of Listing 12.02 to show that she met all of its requirements—a burden that is hers to bear. *Rice*, 384 F.3d at 369-70; *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002). Furthermore, Dr. Thomas specifically opined at the hearing that the evidence of record indicated that Perry's deficits were non-severe and did not satisfy Listing 12.02. (Tr. 652-74.)

judgment for the ALJ by "reweighing evidence" or "resolving conflicts in evidence").

## IV.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED.  The Clerk is directed to enter a judgment in favor of the Commissioner and against Perry.

SO ORDERED.

Enter for this 9th day of December, 2011.

S/Roger B. Cosbey<br>
Roger B. Cosbey,<br>
United States Magistrate Judge